**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| RGN-US IP, LLC and Regus Management Group, LLC, | |
| Plaintiffs and Counterclaim-Defendants, | Civil Action No. 3:18-cv-02482-N |
| - against - | |
| WeWork Companies Inc., | |
| Defendant and Counterclaim-Plaintiff. | |

**WEWORK COMPANIES INC.'S OPPOSITION TO RGN-US IP, LLC AND REGUS**
**MANAGEMENT GROUP, LLC'S MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................1

I.  FACTUAL BACKGROUND..............................................................................2
    A.  WeWork And Its Descriptive Use Of "HQ"............................................2
    B.  Regus And Its "HQ" Design ...................................................................3

II.  LEGAL STANDARD...........................................................................................4

III.  REGUS HAS NOT ESTABLISHED IRREPARABLE HARM .......................5
    A.  Regus Has Failed To Offer Any Evidence Of Irreparable Harm............6
    B.  Regus's Delay In Seeking Relief Warrants Denial Of Its Motion..........7

IV.  REGUS CANNOT SHOW IT IS LIKELY TO SUCCEED ON THE MERITS ..............8
    A.  Regus's Claimed Mark Is Invalid Because The Term "HQ" Is Generic. ...............9
    B.  "HQ By WeWork" Is A Non-Infringing, Descriptive Fair Use...........................12
        1.  WeWork's Use Of "HQ By WeWork" Is Descriptive...............................12
        2.  WeWork Does Not Use "HQ" As A Trademark. ......................................13
        3.  WeWork Acted In Good Faith....................................................................13
    C.  Regus Cannot Establish A Likelihood Of Confusion. ..........................................14
        1.  There Is No Evidence of Actual Confusion. ................................................14
        2.  Regus's "HQ" Design Is Weak....................................................................15
        3.  WeWork's Use Of "HQ By WeWork" Is Distinct. ....................................17
        4.  WeWork's "HQ By WeWork" Services Are Distinct. ................................18
        5.  WeWork's Purchasers Are Distinct. .............................................................19
        6.  WeWork Uses Distinct Advertising Media. .................................................19
        7.  WeWork Selected "HQ By WeWork" In Good Faith. ................................20
        8.  The Potential Purchasers Are Highly Sophisticated. ..................................20
    D.  Regus's Texas Dilution Claim Is Unlikely To Succeed. ......................................21
        1.  Regus's "HQ" Is Not A Famous Mark. .......................................................21
        2.  "HQ By WeWork" Is Unlikely To Dilute Regus's "HQ." .........................23
    E.  Regus's Additional Texas State Law Claims Are Unlikely To Succeed..............24

V.  THE BALANCE OF HARDSHIPS FAVORS WEWORK .............................................24

VI.  THE PUBLIC INTEREST IS SERVED BY DENYING THE INJUNCTION ...............25

VII.  CONCLUSION....................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Action Ink, Inc. v. Anheuser-Busch, Inc.*,
  959 F. Supp. 2d 934 (E.D. La. 2013) .......................................................................14, 15, 16

*Advantage Rent-a-Car, Inc. v. Enter. Rent-a-Car, Co.*,
  238 F.3d 378 (5th Cir. 2001) ...........................................................................................22, 23

*Alliance for Good Gov't v. Coalition for Better Gov't*,
  901 F.3d 498 (5th Cir. 2018) ...................................................................................................16

*Alto Velo Racing Club v. Rouleur Sports Grp., LLC*,
  No. 15-cv-02144, 2015 WL 5462055 (N.D. Cal. Sept. 17, 2015)...........................................25

*Am. Heritage Life Ins. Co. v. Heritage Life Ins. Co.*,
  494 F.2d 3 (5th Cir. 1974) ......................................................................................10, 11, 15

*Am. Mensa, Ltd. v. Inpharmatica, Ltd.*,
  No. WDQ-07-3283, 2008 WL 11363280 (D. Md. Nov. 6, 2008) ..........................................22

*AMID, Inc. v. Medic Alert Found. U.S., Inc.*,
  241 F. Supp. 3d 788 (S.D. Tex. 2017) .................................................................................5, 6

*Amstar Corp. v. Domino's Pizza, Inc.*,
  615 F.2d 252 (5th Cir. 1980) ...........................................................................14, 18, 19, 20

*Apple, Inc. v. Amazon.com, Inc.*,
  No. C-11-1327-PJH, 2011 WL 2638191 (C.D. Cal. July 6, 2011).........................................22

*Armstrong Cork Co. v. World Carpets, Inc.*,
  597 F.2d 496 (5th Cir. 1979) ...........................................................................................15, 20

*Art Attacks Ink, LLC v. MGA Entm't, Inc.*,
  No. 04-cv-1035, 2005 WL 8160189 (S.D. Cal. Dec. 27, 2005) .............................................17

*Baker v. DeShong*,
  90 F. Supp. 3d 659 (N.D. Tex. 2014) .....................................................................................15

*BCOWW Holdings, LLC v. Collins*,
  No. SA-17-CA-00379-FB, 2017 WL 3868184 (W.D. Tex. Sept. 5, 2017)........................5, 24

*Bell v. Harley Davidson Motor Co.*,
  539 F. Supp. 2d 1249 (S.D. Cal. 2008) ..................................................................................13

*Blue Bell Bio-Medical v. Cin-Bad, Inc.*,
 864 F.2d 1253 (5th Cir. 1989) ...................................................................18, 20

*Bluefield Water Ass'n, Inc. v. City of Starkville, Miss.*,
 577 F.3d 250 (5th Cir. 2009) .................................................................................6

*Boire v. Pilot Freight Carriers, Inc.*,
 515 F.2d 1185 (5th Cir. 1975) ...............................................................................8

*Brennan's, Inc. v. Brennan*,
 512 F. Supp. 2d 559 (S.D. Miss.), *aff'd*, 289 Fed. App'x 706 (5th Cir. 2008)........5, 15, 16, 25

*Buc-ee's, Ltd. v. Panjwani*,
 No. 4:15-CV-03704, 2017 WL 4221461 (S.D. Tex. Sept. 21, 2017)....................23

*Bulbs 4 East Side, Inc. v. Ricks*,
 199 F. Supp. 3d 1151 (S.D. Tex. 2016) ...............................................................23

*BuzzBallz, LLC v. JEM Beverage Co., LLC*,
 No. 3:15–CV–588–L, 2015 WL 3948757 (N.D. Tex. June 16, 2015) .....................5, 8, 15, 20

*Chum Ltd. v. Lisowski*,
 198 F. Supp. 2d 530 (S.D.N.Y. 2002)...................................................................20

*Citibank, N.A. v. Citytrust*,
 756 F.2d 273 (2d Cir. 1985)....................................................................................8

*Citigroup Inc. v. AT&T Servs., Inc.*,
 No. 16-cv-4333 KBF, 2016 WL 4362206 (S.D.N.Y. Aug. 11, 2016)...................18

*Coach, Inc. v. Int'l Bazaar Inc.*,
 No. 3:11-CV-1733-N, 2013 WL 12310712 (N.D. Tex. June 7, 2013)....................6

*Cottonwood Fin. Ltd. v. Cash Store Fin. Servs., Inc.*,
 778 F. Supp. 2d 726 (N.D. Tex. 2011) .................................................................23

*Decorative Ctr. of Houston, L.P. v. Direct Response Pubs., Inc.*,
 264 F. Supp. 2d 535 (S.D. Tex. 2003) ..................................................................24

*Dessert Beauty, Inc. v. Fox*,
 568 F. Supp. 2d 416 (S.D.N.Y. 2008)...................................................................13

*Dig. Generation Inc. v. Boring*,
 869 F. Supp. 2d 761 (N.D. Tex. 2012) ...................................................................7

*Downloadcard, Inc. v. Universal Music Grp., Inc.*,
 No. 02-cv-7710, 2002 WL 31662924 (S.D.N.Y. Nov. 26, 2002)..........................25

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006)................................................................................................6

*Ellipse Commc'ns, Inc. v. Caven*,
  No. 3-07-CV-1922-O, 2009 WL 497268 (N.D. Tex. Feb. 26, 2009)...............................5, 6, 7

*Emerald City Mgmt., LLC v. Kahn*,
  No. 4:14-CV-358, 2016 WL 98751 (E.D. Tex. Jan. 8, 2016)................................................23

*Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*,
  762 F.2d 464 (5th Cir. 1985) .............................................................................................6

*Equibrand Corp. v. Reinsman Equestrian Prod., Inc.*,
  No. 307-CV-0536-P, 2007 WL 1461393 (N.D. Tex. May 17, 2007)................................7, 25

*Exxon Corp. v. Texas Motor Exch. of Houston, Inc.*,
  628 F.2d 500 (5th Cir. 1980) ...........................................................................................19

*Fantastic Sams Franchise Corp. v. Mosley*,
  No. H-16-2318, 2016 WL 7426403 (S.D. Tex. Dec. 23, 2016) ...........................................23

*Fed. Exp. Corp. v. Robrad, L.L.C.*,
  No. 3:14-cv-2152, 2014 WL 3880806 (N.D. Tex. Aug. 7, 2014) .......................................5, 6

*Firefly Dig. Inc. v. Google Inc.*,
  817 F. Supp. 2d 846 (W.D. La. 2011)............................................................................. *passim*

*First Franklin Fin. Corp. v. Franklin First Fin., Ltd.*,
  356 F. Supp. 2d 1048 (N.D. Cal. 2005) ..............................................................................24

*Fuji Photo Film Co. v. Shinohara Shoji Kabushiki Kaisha*,
  754 F.2d 591 (5th Cir. 1985) ............................................................................................21

*GE Betz Inc. v. Moffitt-Johnson*,
  301 F. Supp. 3d 696 (S.D. Tex. 2014) ................................................................................24

*Gonannies, Inc. v. Goupoair.com, Inc.*,
  464 F. Supp. 603 (N.D. Tex. 2006) ..........................................................................5, 6, 7, 8

*H.D. Vest, Inc. v. H.D. Vest Mgmt. and Servs., LLC*,
  No. 3:09-CV-00390-L, 2009 WL 1766095 (N.D. Tex. June 23, 2009) ..............................5, 6

*Half Price Books, Records, Magazines, Inc. v. Barnesandnoble.com, LLC*,
  No. Civ.A. 302CV2518-G, 2003 WL 23175436 (N.D. Tex. Aug. 15, 2003) ......................16

*Hershey Creamery Co. v. Hershey Chocolate Corp.*,
  269 F. Supp. 45 (S.D.N.Y. 1967)........................................................................................24

*Hillstone Rest. Grp., Inc. v. Hillstone Mgmt., LLC*,
    No. 3:16-CV-2624-D, 2017 WL 495869 (N.D. Tex. Feb. 7, 2017) .................................21, 23

*Holiday Inns, Inc. v. Holiday Out In Am.*,
    481 F.2d 445 (5th Cir. 1973) ................................................................................................15

*Holland Am. Ins. Co. v. Succession of Roy*,
    777 F.2d 992 (5th Cir. 1985) ..................................................................................................6

*Hypnotic Hats, Ltd. v. Wintermantel Enters., LLC*,
    No. 1:15-CV-06478 (ALC), 2018 WL 4681609 (S.D.N.Y. Sept. 28, 2018)..........................18

*Idaho Golf Partners, Inc. v. TimerStone Mgmt, LLC*,
    No. 1:14-cv-00233-BLW, 2017 WL 3531481 (D. Idaho Aug. 17, 2017) ..............................22

*Instant Media, Inc. v. Microsoft Corp.*,
    No. 07-cv-2639, 2007 WL 2318948 (N.D. Cal. Aug. 13, 2007) ............................................24

*IVFMD Fla., Inc. v. IVFMD, P.A.*,
    No. 3:13-cv-3527-N, 2014 WL 11515574 (N.D. Tex. Mar. 7, 2014) (Godbey, J.) ..5, 9, 22, 24

*J.G. Wentworth, S.S.C. Ltd. P'ship v. Settlement Funding LLC*,
    No. 06-0597, 2007 WL 30115 (E.D. Pa. Jan. 4, 2007)..........................................................19

*J.T. Colby & Co., Inc. v. Apple Inc.*,
    No. 11 Civ. 4060(DLC), 2013 WL 1903883 (S.D.N.Y. May 8, 2013) .............................17, 20

*John Crane Prod. Sol., Inc. v. R2R & D, LLC*,
    861 F. Supp. 2d 792 (N.D. Tex. 2012) .......................................................................... *passim*

*Jones v. Am. Council on Exercise*,
    245 F. Supp. 3d 853 (S.D. Tex. 2017) ...................................................................................9

*Joseph Paul Corp. v. Trademark Custom Homes, Inc.*,
    No. 3:16-CV-1651-L, 2016 WL 4944370 (N.D. Tex. Sept. 16, 2016)....................................7

*Kellogg Co. v. Nat'l Biscuit Co.*,
    305 U.S. 111 (1938)................................................................................................................9

*Kensington Partners v. Cordillera Ranch, Ltd.*,
    No. SA98CA121DWS, 1998 WL 1782540 (W.D. Tex. June 16, 1998)..........................16, 19

*King Ranch, Inc. v. D.R. Horton, Inc.*,
    H-12-797, 2012 WL 1788178 (S.D. Tex. May 16, 2012) ...............................................13, 19

*King-Size, Inc. v. Frank's King Size Clothes, Inc.*,
    547 F. Supp. 1138 (S.D. Tex. 1982) ...............................................................................12, 14

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
  543 U.S. 111 (2004)..................................................................................12

*Long Island-Airports Limousine Serv. Corp. v. N.Y. Airport Servs. Corp.*,
  641 F. Supp. 1005 (E.D.N.Y. 1986) ........................................................25

*Matrix Motor Co., Inc. v. Toyota Jidosha Kabushiki Kaisha*,
  290 F. Supp. 2d 1083 (C.D. Cal. 2003) ...................................................18

*Merriam-Webster, Inc. v. Random House, Inc.*,
  35 F.3d 65 (2d Cir. 1994) .........................................................................14

*Michael Kors, L.L.C. v. Hernandez Int'l Inc.*,
  No. 4:15-CV-0844, 2016 WL 6306129 (S.D. Tex. Oct. 27, 2016) ..........21

*Miller Brewing Co. v. G. Heileman Brewing Co., Inc.*,
  561 F.2d 75 (7th Cir. 1977) ......................................................................11

*Mini Melts, Inc. v. Reckitt Benckiser, Inc.*,
  No. 4:07-cv-271, 2009 WL 10677599 (E.D. Tex. Feb. 26, 2009)....................18, 20

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
  638 F.3d 1137 (9th Cir. 2011) ..................................................................15

*Ocusoft, Inc. v. Walgreen Co.*,
  No. H-17-1038, 2017 WL 1838106 (S.D. Tex. May 8, 2017)....................7

*Oreck Corp. v. U.S. Floor Sys., Inc.*,
  803 F.2d 166 (5th Cir. 1986) ......................................................... *passim*

*Parasol Flavors, LLC v. Snowizard, Inc.*,
  No. 09-3394, 2010 WL 745004 (E.D. La. Feb. 25, 2010)........................10

*Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*,
  498 F. Supp. 805 (D. Mass. 1980) .....................................................18, 21

*Plains Cotton Co-op. Ass'n of Lubbock, Tex. v. Goodpasture Comp. Serv., Inc.*,
  807 F.2d 1256 (5th Cir. 1987) ..........................................................5, 6, 7

*Playboy Enters., Inc. v. Netscape Commc'ns Corp.*,
  55 F. Supp. 2d 1070 (C.D. Cal. 1999), *aff'd*, 202 F.3d 278 (9th Cir. 1999)..........................14

*Playmakers LLC v. ESPN, Inc.*,
  376 F.3d 894 (9th Cir. 2004) ....................................................................24

*Pruvit Ventures, Inc. v. Forevergreen Int'l LLC*,
  No. 4:15-CV-571-ALM-CAN, 2015 WL 9876952 (E.D. Tex. Dec. 23, 2015) ........................8

*Pulse EFT Assoc. v. Sears Roebuck & Co.*,
   247 F.3d 240, 2001 WL 43454 (5th Cir. 2001) ....................................................17, 20, 21, 22

*Real-Time Reporters, P.C. v. Sonntag Reporting Servs., Ltd.*,
   No. 13-C-5348, 2013 WL 5818460 (N.D. Ill. Oct. 29, 2013) .................................................25

*Rin Tin Tin, Inc. v. First Look Studios, Inc.*,
   671 F. Supp. 2d 893 (S.D. Tex. 2009) ...........................................................................12, 13

*Roho, Inc. v. Marquis*,
   902 F.2d 356 (5th Cir. 1990) ...................................................................................................5

*Ronaldo Designer Jewelry, Inc. v. Cox*,
   No. 17-cv-2-DMB-DAS, 2017 WL 3879095 (N.D. Miss. Sept. 5, 2017)................................6

*S Indus., Inc. v. JL Audio, Inc.*,
   29 F. Supp. 2d 878 (N.D. Ill. 1998) ................................................................................18, 21

*S. Tex. Neon Sign Co., Inc. v. Ixtapa, Inc.*,
   Civ. L-08-116, 2009 WL 10695760 (S.D. Tex. Feb. 27, 2009) .......................................5, 7, 8

*Sarco Creek Ranch v. Greeson*,
   36 F. Supp. 3d 726 (S.D. Tex. 2014) ......................................................................................9

*Scott Fetzer Co. v. House of Vacuums Inc.*,
   381 F.3d 477 (5th Cir. 2004) ...........................................................................................20, 24

*Se. Clinical Nutrition Ctrs., Inc. v. Mayo Found. for Med. Educ. & Res.*,
   135 F. Supp. 3d 1267 (N.D. Ga. 2013) ..................................................................................13

*Sec. Ctr., Ltd. v. First Nat'l Sec. Ctrs.*,
   750 F.2d 1295 (5th Cir. 1985) ...........................................................................8, 15, 18, 19

*Shell Trademark Mgmt. B.V. v. Warren Unilube, Inc.*,
   765 F. Supp. 2d 884 (S.D. Tex. 2011) ...................................................................................18

*Slide Fire Sols., L.P. v. Bump Fire Sys., LLC*,
   No. 3:14-CV-3358-M, 2016 WL 3361552 (N.D. Tex. Apr. 14, 2016) ....................................7

*Small Bus. Assistance Corp. v. Clear Channel Broad., Inc.*,
   210 F.3d 278 (5th Cir. 2000) .................................................................................................10

*Sno-Wizard Mfg., Inc. v. Eisemann Prods. Co.*,
   791 F.2d 423 (5th Cir. 1986) ..........................................................................................17, 18, 20

*Soc'y of Fin. Exam'rs v. Nat'l Ass'n of Certified Fraud Exam'rs Inc.*,
   41 F.3d 223 (5th Cir. 1995) ..............................................................................................9, 19

*S. Snow Mfg. Co. v. Sno Wizard Holdings, Inc.*,
    829 F. Supp. 2d 431 (E.D. La. 2011) ....................................................................15

*Soweco, Inc. v. Shell Oil Co.*,
    617 F.2d 1178 (5th Cir. 1980) ................................................................9, 12, 13

*Spirit Monkey, LLC. v. Imagestuff.com, Inc.*,
    No. SA-17-CA-48-OLG, 2017 WL 8182724 (W.D. Tex. July 24, 2017) .............................21

*Springboards to Educ., Inc. v. Scholastic Book Fairs, Inc.*,
    No. 3:17-CV-0054-B, 2018 WL 1806500 (N.D. Tex. Apr. 17, 2018) ..................................23

*Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*,
    240 F.3d 832 (9th Cir. 2001) ................................................................................11

*Sullivan v. CBS Corp.*,
    385 F.3d 772 (7th Cir. 2004) ................................................................................15

*Sun Banks of Fla., Inc. v. Sun Fed. Sav. & Loan Ass'n*,
    651 F.2d 311 (5th Cir. 1981) ........................................................................14, 15, 17

*Sutter Home Winery, Inc. v. Madrona Vineyards LP*,
    No. 05-cv-0587, 2005 WL 701599 (N.D. Cal. Mar. 23, 2005) .............................................25

*Tex. Moving Co. Inc. v. NCT Moving Servs.*,
    No. 4:14-CV-2751, 2015 WL 12778799 (S.D. Tex. May 11, 2015)................................12, 13

*TGI Friday's Inc. v. Great Nw. Rests., Inc.*,
    652 F. Supp. 2d 763 (N.D. Tex. 2009) ..................................................................25

*Urgent Care Inc. v. S. Miss. Urgent Care Inc.*,
    289 Fed. App'x. 741 (5th Cir. 2008) ..........................................................*passim*

*Va. Polytechnic Inst. & State Univ. v. Hokie Real Estate, Inc.*,
    100 U.S.P.Q.2d 1199, 2011 WL 926862 (W.D. Va. Mar. 15, 2011) ....................................23

*VPI Holding Co. v. Success Res. USA LLC*,
    No. 3:12-cv-3785-N, 2014 WL 12584331 (N.D. Tex. Nov. 18, 2015) .......................6, 16, 25

*Waco Int'l, Inc. v. KHK Scaffolding Houston Inc.*,
    278 F.3d 523 (5th Cir. 2002) ................................................................................12

*Water Pik, Inc. v. Med-Sys., Inc.*,
    726 F.3d 1136 (10th Cir. 2013) ............................................................................20

*Wellpath Sol., Inc. v. Wellpath Energy Servs., LLC*,
    No. 6:12cv286, 2013 WL 12123326 (E.D. Tex. Jan. 20, 2013)............................................24

*Windsurfing Int'l, Inc. v. Fred Ostermann GmbH*,
    613 F. Supp. 933 (S.D.N.Y. 1985)........................................................................11

*Winter v. Natural Res. Def. Council, Inc.*,
    555 U.S. 7 (2008).....................................................................................................5, 6

*Xtreme Lashes, LLC v. Xtended Beauty, Inc.*,
    576 F.3d 221 (5th Cir. 2009) ...................................................................................21

*Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*,
    698 F.2d 786 (5th Cir. 1983) .............................................................................12, 20

*Zhejiang Med. Co., Ltd. v. Kaneka Corp.*,
    No. H-11-1052, 2012 WL 12893418 (S.D. Tex. Aug. 13, 2012).............................24

**Statutes**

15 U.S.C. § 1064(3) ....................................................................................................9

15 U.S.C. § 1064(c) ....................................................................................................9

15 U.S.C. § 1115(b)(4) ..............................................................................................12

Tex. Bus. & Com. § 16.103(a).....................................................................................21

Tex. Bus. & Com. § 16.103(b).............................................................................21, 22

Tex. Bus. & Com. § 16.103(d)....................................................................................12

**Other Authorities**

Gerald L. Ford, *Survey Percentages in Lanham Act Matters, in Trademark &*
    *Deceptive Adver. Surveys* 311, 318 (Seidman & Swann eds. 2012)........................11

McCarthy on Trademarks & Unfair Competition (5th ed. 2018) .......................... *passim*

## PRELIMINARY STATEMENT

The striking thing about Plaintiffs and Counterclaim-Defendants RGN-US IP, LLC ("RGN") and Regus Management Group, LLC's (collectively, "Regus") brief is that it fails to meet *any* of the requirements for a preliminary injunction, much less all of them, as is required in the Fifth Circuit.  At bottom, Regus improperly seeks to monopolize the common term "HQ" for "headquarters" and to prevent WeWork Companies Inc. ("WeWork") from fairly describing its "HQ by WeWork" service of providing headquarters for medium-sized businesses.

*First*, the Fifth Circuit does not presume irreparable harm, and Regus provides no evidence that any injury would be imminent or irreparable.  Courts have repeatedly found unavailing the type of conclusory allegations Regus makes.  Moreover, Regus waited ***three months*** after learning of WeWork's use to file its motion, and this delay in seeking relief belies any immediate threat warranting the extraordinary remedy of a preliminary injunction.

*Second*, Regus cannot show a substantial likelihood of success on any of its claims.  Regus relies heavily on its trademark registration to claim exclusive rights to "HQ."  However, the registration is *not* for "HQ" alone, but rather, is for a stylized design that was abandoned *over 18 years ago*.  Tellingly, only after WeWork announced "HQ by WeWork" did Regus hurriedly apply to register "HQ" alone, as well as the designed versions of "HQ" that Regus uses.  Simply put, Regus cannot prevent others from using the generic term "HQ" for headquarters.  In fact, a survey confirms that the majority of relevant consumers view "HQ" as a generic term, not as a brand.  Nor can Regus establish a likelihood of confusion, as it *admits* that there has been no actual confusion since WeWork's launch almost four months ago.  Moreover, sophisticated businesses are unlikely to be confused.  Regus's Texas dilution claim also fails, as a survey confirms that "HQ" is not famous within Texas, and Regus cannot show likelihood of dilution.  Further, Regus cannot meet the additional elements of its tortious interference claim.

*Third*, the tangible harm that WeWork would suffer from a preliminary injunction far outweighs the speculative harm Regus claims.  Whereas Regus offers no evidence of harm, WeWork, if forced to cease its use, would be precluded from using a generic term needed to describe its service, and would have to re-do its marketing materials and re-launch its service. As a practical matter, a "preliminary" injunction would be permanent, as it would be impractical for WeWork to change its marketing for a second time.  Moreover, an injunction would tarnish WeWork's reputation, as the public would assume, unfairly, that it had done something wrong.

*Fourth*, a preliminary injunction would disserve the public interest and harm consumers, as it would prevent WeWork from fairly describing its headquarters service and would grant Regus a monopoly over a common, generic term.  Regus's motion should be denied.

## I.     FACTUAL BACKGROUND

### A.     WeWork And Its Descriptive Use Of "HQ"

WeWork is a well-known company that has created a global lifestyle brand in real estate and pioneered a category, "space as a service," that has reinvented how companies and individuals utilize physical space.  (Appendix ("App.") at 1-2.)  WeWork's core offering—with which it is strongly associated—is providing its members with access to shared office space, coworking and related business services.  (*Id.* at 4.)  WeWork has 335 locations in 83 cities worldwide, including all major metropolitan cities in the United States.  (*Id.* at 2.)  WeWork has over 320,000 members, and its website receives about 50,000 unique visitors daily.  (*Id.*)

Since at least 2013, WeWork, like many other companies, has used "HQ" as a synonym for "headquarters."  (*Id.* at 2, 12-40.)  For instance, WeWork has called its corporate headquarters "WeWork HQ."  (*Id.*)  In addition, WeWork has used "HQ" to state that it provides "headquarters" for businesses, such as "Whether you need a desk, office space, or entire HQ . . .."  (*Id.*)  Regus has not challenged any of these historical uses of "HQ."  (*Id.* at 4, 47-53.)

On August 8, 2018, WeWork announced a new service, which—unlike its core offering for companies and individuals using shared space—provides private HQs for mid-sized businesses. (*Id.*)  To communicate that WeWork is sourcing, designing, and building HQ space, WeWork adopted the phrase "HQ by WeWork." (*Id.* at 4-5.)  WeWork chose "HQ" because that was the shorter, more modern, and commonly accepted way to refer to headquarters. (*Id.*)

WeWork has consistently used the phrase "HQ by WeWork" in its advertisements. (*Id.* at 5-6, 54-60.)  Within the "HQ by WeWork" phrase, "by WeWork" appears in the same font, size and style as "HQ." (*Id.*)  In addition, WeWork's marketing materials include the distinctive **wework** logo. (*Id.* at 5-7, 54-71.)  As shown in the below example, the source, affiliation and nature of WeWork's service are made clear. (*Id.* at 5-6, 58-60 (red circle added).)



WeWork works closely with its "HQ by WeWork" customers to source, design, and ultimately construct private HQs. (*Id.* at 7.)  This is a multi-step, time-consuming process that includes selecting a custom layout and interior design and branding the HQ with the customer's name and logos. (*Id.* at 7, 92-93, 426-427.)  Customers must sign a minimum of a two-year agreement. (*Id.* at 7-8.)

**B.      Regus And Its "HQ" Design**

Regus purports to be the leading global workspace provider and to own U.S. Registration No. 1,586,038 for the design **HQ** (the "Design Registration"). (*Id.* at 79.)  Although Regus's brief repeatedly emphasizes the Design Registration, the public archives for its "HQ" website show that any rights have been abandoned, as it has not been used for *at least 18 years*. (*Id.* at 671-686.)  Regus does not own a registration for "HQ" alone. (*Id.* at 672, 694-696.)

Regus's brief is conspicuously silent as to the origin of "HQ," but its use shows that "HQ" is used in a generic sense.  For instance, Regus advertises that it offers "HQ office spaces," which come "fully furnished" so customers can work "as soon as you turn up."  (*Id.* at 92-94, 422-425.)

Regus admits that it became aware of "HQ by WeWork" on August 8, 2018, when WeWork announced its new service.  After WeWork's launch, Regus also took steps to shore up its litigation position.   Prior to WeWork's launch, Regus used the following design:

 (the "Globe Design").   (*Id.* at 672, 691-693.)   Tellingly, after WeWork's announcement, Regus dropped the globe graphic and "A MEMBER OF THE REGUS GROUP NETWORK," and instead adopted the design **HQ** (the "New Design"). Regus also modified the description of its services.  (*Id.* at 672, 697-699)   Whereas the prior website referred to "*ready-to-use*" offices/meeting rooms, the new website states that Regus provides "[o]ffice space, co-working and meeting rooms *designed for you*, your team, and your entire business," making the service appear more similar to the "HQ by WeWork" service.  (*Id.* at 671-672, 674-686,  (emphasis added).)  In addition, the day after WeWork's launch, Regus's affiliate applied to register the Globe Design, as well as the word "HQ" on its own, consistent with the fact that the Design Registration does not cover such uses.   Those applications, however, were abandoned after Regus filed its motion.  (*Id.* at 672, 691-696.)  More recently, RGN applied to register the New Design.  (*Id.* at 672, 697-699.)

## II.    LEGAL STANDARD

To obtain a preliminary injunction, Regus must show (1) substantial threat of immediate and irreparable harm, (2) substantial likelihood of success on the merits, (3) the threatened injury

outweighs harm to WeWork, and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Roho, Inc. v. Marquis*, 902 F.2d 356, 358 (5th Cir. 1990). Such relief is "extraordinary" and "never awarded as of right." *Winter*, 555 U.S. at 24. Failure to show any one element requires denial of the motion. *Plains Cotton Co-op. Ass'n of Lubbock, Tex. v. Goodpasture Comp. Serv., Inc.*, 807 F.2d 1256, 1261 (5th Cir. 1987).

Courts routinely deny preliminary injunctions in trademark cases where a plaintiff has not met its burden. *E.g.*, *Urgent Care Inc. v. S. Miss. Urgent Care Inc.*, 289 Fed. App'x. 741, 745 (5th Cir. 2008) (reversing preliminary injunction because term was generic); *Fed. Exp. Corp. v. Robrad, L.L.C.*, No. 3:14-cv-2152, 2014 WL 3880806, at *2 (N.D. Tex. Aug. 7, 2014) (lack of irreparable harm); *IVFMD Fla., Inc. v. IVFMD, P.A.*, No. 3:13-cv-3527-N, 2014 WL 11515574, at *4 (N.D. Tex. Mar. 7, 2014) (Godbey, J.) (denying motion regarding identical term for identical services); *Gonannies, Inc. v. Goupoair.com, Inc.*, 464 F. Supp. 603, 608-09 (N.D. Tex. 2006) (no irreparable harm); *H.D. Vest, Inc. v. H.D. Vest Mgmt. and Servs., LLC*, No. 3:09-CV-00390-L, 2009 WL 1766095, at *4 (N.D. Tex. June 23, 2009) (same); *S. Tex. Neon Sign Co., Inc. v. Ixtapa, Inc.*, Civ. L-08-116, 2009 WL 10695760, at *5 (S.D. Tex. Feb. 27, 2009) (denying motion regarding identical mark for identical goods).[1] Regus has failed to show *any* of the elements, let alone all of them.

## III.   REGUS HAS NOT ESTABLISHED IRREPARABLE HARM

As a threshold matter, Regus has not shown irreparable harm. Irreparable harm is not presumed where success on the merits is likely, but rather is a distinct requirement. The Fifth Circuit "ha[s] made clear . . . that preliminary injunctions will be denied based on a failure to

---

[1] *See also Brennan's, Inc. v. Brennan*, 512 F. Supp. 2d 559, 574 (S.D. Miss.), *aff'd*, 289 Fed. App'x 706 (5th Cir. 2008); *AMID, Inc. v. Medic Alert Found. U.S., Inc.*, 241 F. Supp. 3d 788, 823 (S.D. Tex. 2017); *BCOWW Holdings, LLC v. Collins*, No. SA-17-CA-00379-FB, 2017 WL 3868184, at *12 (W.D. Tex. Sept. 5, 2017); *BuzzBallz, LLC v. JEM Beverage Co., LLC*, No. 3:15–CV–588–L, 2015 WL 3948757, at *2 (N.D. Tex. June 16, 2015); *John Crane Prod. Sol., Inc. v. R2R & D, LLC*, 861 F. Supp. 2d 792, 802 (N.D. Tex. 2012); *Ellipse Commc'ns, Inc. v. Caven*, No. 3-07-CV-1922-O, 2009 WL 497268, at *1 (N.D. Tex. Feb. 26, 2009).

prove separately each of the four elements," and has rejected that irreparable injury is presumed. *Plains Cotton*, 807 F.2d at 1261; *see Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985); *Ronaldo Designer Jewelry, Inc. v. Cox*, No. 17-cv-2-DMB-DAS, 2017 WL 3879095, at \*6-\*9 (N.D. Miss. Sept. 5, 2017) ("[A] presumption of irreparable harm in a Lanham Act case is contrary to [the law] and is, therefore, improper."); *Gonannies*, 464 F. Supp. 2d at 608-09. Accordingly, courts within the Fifth Circuit routinely deny preliminary injunctions for the "critical shortcoming" of failing to prove irreparable harm. *Fed. Exp.*, 2014 WL 3880806, at \*3; *see AMID*, 241 F. Supp. 3d at 823; *Ellipse*, 2009 WL 497268, at \*1; *H.D. Vest*, 2009 WL 1766095, at \*4; *Gonannies*, 464 F. Supp. at 608-09.

Regus's argument that irreparable injury should be presumed is contrary to Fifth Circuit law and not supported by the cases it cites. *VPI Holding Co. v. Success Res. USA LLC* refused to presume irreparable injury. No. 3:12-cv-3785-N, 2014 WL 12584331, at \*7 (N.D. Tex. Nov. 18, 2015). The suggestion in *Coach, Inc. v. Int'l Bazaar Inc.* that likelihood of confusion supports irreparable harm is contrary to the law, and relies on a district court case decided *before* the Supreme Court's decision in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006), which eliminated the presumption. No. 3:11-CV-1733-N, 2013 WL 12310712 at \*8 (N.D. Tex. June 7, 2013). Further, such a presumption would improperly entitle any plaintiff that was likely to succeed to "the extraordinary remedy" of a preliminary injunction. *Winter*, 555 U.S. at 24.

## A.     Regus Has Failed To Offer Any Evidence Of Irreparable Harm.

Regus cannot prove that any injury from WeWork's use would be "irreparable" and cannot otherwise be remedied. *Enter.*, 762 F.2d at 472-73; *see Bluefield Water Ass'n, Inc. v. City of Starkville, Miss.*, 577 F.3d 250, 253 (5th Cir. 2009). "Speculative injury is not sufficient[.]" *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985); *Ellipse*, 2009 WL 497268, at \*1. Thus, courts deny preliminary injunctions where a plaintiff

"fails to substantiate . . . conclusory assertions with any competent evidence." *Slide Fire Sols., L.P. v. Bump Fire Sys., LLC*, No. 3:14-CV-3358-M, 2016 WL 3361552, at \*2 (N.D. Tex. Apr. 14, 2016); *see Plains Cotton*, 807 F.2d at 1261 (affirming denial given "elusive" allegations); *Ocusoft, Inc. v. Walgreen Co.*, No. H-17-1038, 2017 WL 1838106, at \*3 (S.D. Tex. May 8, 2017) (denying motion for lack of evidence); *Joseph Paul Corp. v. Trademark Custom Homes, Inc.*, No. 3:16-CV-1651-L, 2016 WL 4944370, at \*15 (N.D. Tex. Sept. 16, 2016) (assertions were "conclusory and based on speculation"); *Gonannies*, 464 F. Supp. 2d at 608.

Yet, conclusory and speculative assertions are all that Regus offers. Regus's primary argument for irreparable harm is that confusion and dilution are likely. But as discussed above, a mere likelihood of success (which Regus cannot show) cannot support a finding of irreparable injury. Regus's only other reasoning is that it will "lose control" of the goodwill and reputation of its "HQ" design. But mere incantation of "loss of market share, goodwill, or reputation" is precisely the type of unsupported speculation that is insufficient. *Ocusoft*, 2017 WL 1838106, at \*3; *see Dig. Generation Inc. v. Boring*, 869 F. Supp. 2d 761, 778 (N.D. Tex. 2012) ("movant must come forward with evidence" showing irreparable loss); *S. Tex. Neon*, 2009 WL 10695760, at \*4 (movant "provided little to no evidence" of loss of goodwill or reputation); *Ellipse*, 2009 WL 469268, at \*1. Moreover, loss of goodwill "is usually compensable in money damages," and thus is not "irreparable." *S. Tex. Neon*, 2009 WL 10695760, at \*4; *see Joseph Paul*, 2016 WL 4944370, at \*15; *Ellipse*, 2009 WL 497268 at \*1; *Gonannies*, 464 F. Supp. 2d at 609.[2]

### B.    Regus's Delay In Seeking Relief Warrants Denial Of Its Motion.

Regus also cannot meet its burden of establishing irreparable injury because it has not acted as if any harm is imminent. Regus admits that it became aware of "HQ by WeWork" on

---

[2] *Equibrand Corp. v. Reinsman Equestrian Prod., Inc.* is inapposite, as there was actual confusion, unlike here. No. 307-CV-0536-P, 2007 WL 1461393, at \*11 (N.D. Tex. May 17, 2007).

August 8, 2018.  Nevertheless, it did not contact WeWork until almost six weeks later, when it filed the Complaint out of the blue.  (App. at 9.)  Even then, Regus did not seek immediate relief. Instead, it waited ***almost three months*** after WeWork's launch to file its motion (Dkt. 22), thus indicating a lack of "imminent" harm.  "If the alleged harms to [Regus's] business are indeed as detrimental as [Regus] assert[s], [Regus] would have sought injunctive relief as soon as practicable after [WeWork's] launch[.]"  *Pruvit Ventures, Inc. v. Forevergreen Int'l LLC*, No. 4:15-CV-571-ALM-CAN, 2015 WL 9876952, at *8 (E.D. Tex. Dec. 23, 2015); *see Boire v. Pilot Freight Carriers, Inc.*, 515 F.2d 1185, 1193 (5th Cir. 1975) (movant waited three months); *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985) (motion filed 10 weeks after discovery); *BuzzBallz*, 2015 WL 3948757, at *7 (plaintiff waited to sue and waited longer to file motion); *S. Tex. Neon*, 2009 WL 10695760, at *4 (motion filed at least three months after use).

To distract from this obvious delay, Regus asserts that it moved upon learning that December 18, 2018 was the earliest date for a mediation.  That is both nonsensical and false.  It is nonsensical because, regardless of the mediation, Regus could have moved at any time after learning of WeWork's use.  This is not a case where the parties were engaged in settlement discussions, which even then would not excuse delay.  *Pruvit*, 2015 WL 9876952, at *8; *Gonannies*, 464 F. Supp. 2d at 608.  Regus's excuse also is factually inaccurate.  WeWork offered many earlier dates with the same mediator, as well as earlier dates with other mediators. (App. at 672, 700-708.)  ***Regus*** chose December 18th (the latest date offered) and cannot now use that choice to justify its delay.  Its conduct only confirms "its lack of urgency," and thus that "there is no substantial threat of irreparable harm[.]"  *S. Tex. Neon*, 2009 WL 10695760, at *4.

## IV.   REGUS CANNOT SHOW IT IS LIKELY TO SUCCEED ON THE MERITS

To succeed on its claims, Regus must establish that it has a protectable right in "HQ" as a mark.  *Urgent Care*, 289 Fed. App'x. at 743; *Sec. Ctr., Ltd. v. First Nat'l Sec. Ctrs.*, 750 F.2d

1295, 1298 (5th Cir. 1985); *IVFMD*, 2014 WL 11515574 at *2.  In the context of a preliminary injunction regarding a registered mark, courts in the Fifth Circuit have required plaintiffs to overcome affirmative defenses and prove validity.  *Sarco Creek Ranch v. Greeson*, 36 F. Supp. 3d 726, 730 (S.D. Tex. 2014) (registrant had burden of overcoming affirmative defense and thus proving validity on preliminary injunction); *see also Jones v. Am. Council on Exercise*, 245 F. Supp. 3d 853, 859 (S.D. Tex. 2017) (plaintiff had to overcome fair use defense for preliminary injunction).  Here, Regus cannot establish a substantial likelihood of success on the merits.

A.     **Regus's Claimed Mark Is Invalid Because The Term "HQ" Is Generic.**

The Design Registration is limited to a specific design of the letters "HQ," which has not been used *for at least 18 years*.  (App. at 671-672, 674-686.)  This may explain why Regus's brief never depicts the registered version, despite emphasizing it extensively.  Regardless, Regus cannot claim exclusive rights to the common term "HQ," which is generic for the headquarters of a business.  It is black-letter law that generic terms are not protected and that everyone is free to use them.  *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1183 (5th Cir. 1980).  Thus, even "incontestable" registrations for generic terms may be cancelled.[3]  *Id.*; 15 U.S.C. § 1064(c).  A "generic" term "refers to a particular genus or class" of good or service and "suggests the basic nature of articles or services."  *Soweco*, 617 F.2d at 1183; *see Urgent Care*, 289 Fed. App'x. at 743.  To be protected, "the *primary significance* of the term in the minds of the consuming public [must be] not the product but *the producer*."  *Kellogg Co. v. Nat'l Biscuit Co.*, 305 U.S. 111, 118 (1938) (emphasis added); 15 U.S.C. § 1064(3); *Soc'y of Fin. Exam'rs v. Nat'l Ass'n of Certified Fraud Exam'rs Inc.*, 41 F.3d 223, 227 (5th Cir. 1995).  For instance, the Fifth Circuit

---

[3] The term "incontestable" is "misleading," as it does not mean that a mark cannot be challenged, but rather simply limits the grounds.  6 McCarthy on Trademarks & Unfair Competition ("McCarthy") § 32:147 (5th ed. 2018).  WeWork has petitioned to cancel the Design Registration for genericness, abandonment, and fraud.  (App. at 672, 709-717.)

found SUMMER JAM generic for a concert in the summer, *Small Bus. Assistance Corp. v. Clear Channel Broad., Inc.*, 210 F.3d 278, 279 (5th Cir. 2000), and URGENT CARE generic for non-emergency medical services, *Urgent Care*, 289 Fed. App'x. at 743.   Similarly, the registered term HURRICANE was found generic because it identified a type of drink, *Parasol Flavors, LLC v. Snowizard, Inc.*, No. 09-3394, 2010 WL 745004, at *6 (E.D. La. Feb. 25, 2010), and GADGET was found generic, despite plaintiff's registrations, for website and intranet applications, *Firefly Dig. Inc. v. Google Inc.*, 817 F. Supp. 2d 846, 858 (W.D. La. 2011).

To determine whether a term is generic, courts consider dictionary definitions, third party use, and consumer surveys.   *Urgent Care*, 289 Fed. App'x. at 743; *Am. Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, 494 F.2d 3, 11 n.5 (5th Cir. 1974), *abrogated on other grounds by B&B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1305 (2015); *Firefly*, 817 F. Supp. 2d at 857.   All of these factors show that "HQ" is generic for a type of office space: headquarters.

Dictionary definitions are relevant because they indicate "the ordinary significance and meaning of words to the public."  *Am. Heritage*, 494 F.3d at 11 n.5.   "HQ" is not a coined term, but rather is a common word that appears in 55 dictionaries and thesauruses.   (App. at 82-83, 124-209)   It is defined as "headquarters," which in turn refers to office space, such as "the chief administrative office of an organization."   (*Id*.)   Such definitions strongly support that "HQ" is generic.   *Am. Heritage*, 494 F.2d at 11; *Firefly*, 817 F. Supp. 2d at 858.

Third party use indicates "whether others in the same business would generally need the word to adequately describe their product or service[.]"   *Urgent Care*, 289 Fed. App'x. at 743.   Extensive third party use confirms that "HQ" refers to "headquarters," a type of office space.   As discussed by expert Barry Lewen, the commercial real estate industry regularly uses "HQ" for "headquarters."  (App. at 75.)   "HQ" has been used for at least 46 business and/or product names

to refer to "headquarters" or office space.  (*Id.* at 86-91, 265-421.)  At least 81 book titles use "HQ" to refer to "headquarters."  (*Id.* at 85-86, 248-264.)  In the last 10 years, over 21,000 articles have used "HQ" in connection with headquarters or office space.  (*Id.* at 83-84, 210-247.)  WeWork has referred to its own headquarters as "WeWork HQ" for years, and has used "HQ" synonymously with "headquarters" to discuss its services.  (*Id.* at 2, 12-46.)  Courts have found marks generic based on far less evidence.  *Am. Heritage*, 494 F.2d at 11 ("Heritage" generic as it was generally used in industry); *Urgent Care*, 289 Fed. App'x. at 744 ("Urgent Care" generic given 20 corporate names, 10 trademarks, and "several" medical journals); *Firefly*, 817 F. Supp. 2d at 858-59 ("Gadget" generic given 13 third party uses and "a number" of books).

Consumer surveys have become "*de rigueur* in litigation over genericness," such that "[j]udges . . . often expect to receive . . . surveys in resolving generic disputes."  2 McCarthy § 12:14 (5th ed. 2018); *see Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 840 (9th Cir. 2001); *Firefly*, 817 F. Supp. 2d at 859.  Courts find a term generic when a survey establishes that "a majority" of relevant consumers understand the term as a common name.  Gerald L. Ford, *Survey Percentages in Lanham Act Matters, in Trademark & Deceptive Adver. Surveys* 311, 318 (Seidman & Swann eds. 2012).  While Regus offers no survey evidence, a survey by expert Dr. Alex Simonson found that 55% of office space consumers view "HQ" as generic, while only 30% view it as a brand.  (App. at 433, 452-454.)  Courts have found marks generic where even lower percentages viewed a term as generic, and higher percentages viewed it as a brand.  *Miller Brewing Co. v. G. Heileman Brewing Co., Inc.*, 561 F.2d 75, 77 (7th Cir. 1977) (reversing preliminary injunction and finding "light" generic for beer where 43% viewed it as a brand and 45% did not); *Windsurfing Int'l, Inc. v. Fred Ostermann GmbH*, 613 F. Supp.

933, 959 (S.D.N.Y. 1985) (term found generic where 36% thought it was a brand), *vacated on other grounds*, 828 F.2d 755 (Fed. Cir. 1987).

### B.     "HQ By WeWork" Is A Non-Infringing, Descriptive Fair Use.

Trademark law does not allow "anyone to obtain a complete monopoly on use of a descriptive term simply by grabbing it first."   *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 122 (2004).   Thus, "descriptive fair use" is a complete defense. 15 U.S.C. § 1115(b)(4); Tex. Bus. & Com. § 16.103(d); *KP*, 543 U.S. at 122; *Waco Int'l, Inc. v. KHK Scaffolding Houston Inc.*, 278 F.3d 523, 534-35 (5th Cir. 2002); *Soweco*, 617 F.2d at 1185; *Tex. Moving Co. Inc. v. NCT Moving Servs.*, No. 4:14-CV-2751, 2015 WL 12778799, at *6 (S.D. Tex. May 11, 2015).   The defense applies when a term "is used not as a trademark but 'fairly and in good faith only to describe to users the . . . services of [a] party[.]"   *Soweco*, 617 F.2d at 1185 (citation omitted).   The defense also may apply where confusion is likely.   *KP*, 543 U.S. at 122.

### 1.     WeWork's Use Of "HQ By WeWork" Is Descriptive.

A term is used descriptively if it denotes "a characteristic or quality" of a service.   *Rin Tin Tin, Inc. v. First Look Studios, Inc.*, 671 F. Supp. 2d 893, 899 (S.D. Tex. 2009); *see Tex. Moving*, 2015 WL 12778799, at *4.   Here, "HQ by WeWork" describes that WeWork provides headquarters.   WeWork makes this clear by explaining that the service "is our customizable, private headquarters solution[.]"   (App. at 5-6, 54-60.)   Numerous courts have found similar terms a descriptive fair use. *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 793 (5th Cir. 1983) ("Fish-Fri" described mix for frying fish), *abrogated on other grounds by KP*, 543 U.S. at 122; *Soweco*, 617 F.2d at 1186-87 ("larvicide" described product "used to kill fly larvae"); *King-Size, Inc. v. Frank's King Size Clothes, Inc.*, 547 F. Supp. 1138, 1164 (S.D. Tex. 1982) ("king size" described apparel for large men); *Tex. Moving*, 2015 WL 12778799, at *5.

### 2.    WeWork Does Not Use "HQ" As A Trademark.

WeWork does not use "HQ" to "identify the source" of its service, and thus does not use it as a trademark. *Rin Tin Tin*, 671 F. Supp. 2d at 899; *King Ranch, Inc. v. D.R. Horton, Inc.*, H-12-797, 2012 WL 1788178, at *6 (S.D. Tex. May 16, 2012). WeWork uses its well-known house mark WEWORK to identify the *source* of its service, whereas "HQ" merely describes the *nature* of its service and the product it offers. Accordingly, WeWork owns trademark registrations for WEWORK, but it has not applied to register "HQ" or "HQ by WeWork." (*Id.* at 4-5.) Where a descriptive term is used as a part of a product name, that does not mean that the term is used as a mark. *Soweco*, 617 F.2d at 1189. Thus, in *Soweco*, the term "Larvicide" within the product names "RABON Oral Larvicide" and "Poultry Spray & Larvicide" was used descriptively and not as a mark. *Id.* Similarly, "love potion" within product names was a descriptive fair use, as the court recognized that descriptive product names are generic. *Dessert Beauty, Inc. v. Fox*, 568 F. Supp. 2d 416, 424 (S.D.N.Y. 2008); *see King Ranch*, 2012 WL 1788178, at *6. This is consistent with the application of fair use where defendant uses a descriptive term alongside its house mark, similar to "HQ by WeWork." *E.g.*, *Se. Clinical Nutrition Ctrs., Inc. v. Mayo Found. for Med. Educ. & Res.*, 135 F. Supp. 3d 1267, 1277 (N.D. Ga. 2013) (phrase not used as mark given use of defendant's own marks); *Bell v. Harley Davidson Motor Co.*, 539 F. Supp. 2d 1249, 1259 (S.D. Cal. 2008) (phrase was descriptive where used with defendant's name and logo); *Rin Tin Tin*, 671 F. Supp. 2d at 901.

### 3.    WeWork Acted In Good Faith.

The use of a term to describe a feature or characteristic of a product shows good faith. *Soweco*, 617 F.2d at 1187 (descriptive term used in good faith); *King Ranch*, 2012 WL 1788178, at *8 (term described location of estate); *Rin Tin Tin*, 671 F. Supp. 2d at 901 (phrase described film, not origin). Here, WeWork selected "HQ by WeWork" to describe its headquarters service,

consistent with the widespread use of "HQ" for headquarters and WeWork's longtime use of "HQ" for its own corporate headquarters and to describe its services.  (App. at 2, 4-5, 12-40, 75.)

### C.      Regus Cannot Establish A Likelihood Of Confusion.

In order to show a likelihood of success on its trademark infringement claims, Regus must show that consumers are likely to be confused as to the source, affiliation, or sponsorship of the "HQ by WeWork" service.  *Oreck Corp. v. U.S. Floor Sys., Inc.*, 803 F.2d 166, 170 (5th Cir. 1986).  This requires "'a probability of confusion' rather than a mere possibility."  *John Crane*, 861 F. Supp. 2d at 795, 801 (citation omitted).  Here, all eight factors considered by the Fifth Circuit confirm that Regus cannot meet this burden.  *Oreck*, 803 F.2d at 170.

### 1.      There Is No Evidence of Actual Confusion.

Actual confusion is "the best evidence of likelihood of confusion."  *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 273 (5th Cir. 1980); *see Action Ink, Inc. v. Anheuser-Busch, Inc.*, 959 F. Supp. 2d 934, 947 (E.D. La. 2013).  In the almost four months since WeWork's launch, there has been *no* actual confusion.  (App. at 9.)  Regus concedes this and does not offer a survey, though it has the burden.  This "warrants a presumption that the results would have been unfavorable."  *Playboy Enters., Inc. v. Netscape Commc'ns Corp.*, 55 F. Supp. 2d 1070, 1084 (C.D. Cal. 1999), *aff'd*, 202 F.3d 278 (9th Cir. 1999) (preliminary injunction denied); *see Merriam-Webster, Inc. v. Random House, Inc.*, 35 F.3d 65, 72 (2d Cir. 1994) ("The lack of survey evidence counts against finding actual confusion."); *Action Ink*, 959 F. Supp. 2d at 947; *King-Size*, 547 F. Supp. at 1162 n.16 (omission of survey was "both suspect and significant").

Regus's only argument is to mischaracterize articles discussing WeWork's service. Those articles, however, do not even mention Regus, nor do they show confusion.  Rather, they simply show the media using "HQ" to mean "headquarters," as is common.  *Sun Banks of Fla., Inc. v. Sun Fed. Sav. & Loan Ass'n*, 651 F.2d 311, 319 (5th Cir. 1981) (evidence was not related

to "potential customer[s] concerning the transaction of business"); *Armstrong Cork Co. v. World Carpets, Inc.*, 597 F.2d 496, 505-06 (5th Cir. 1979) (media use was not confusion).  Because Regus has not offered any evidence of confusion, this factor favors WeWork.[4]  *Oreck*, 803 F.2d at 173; *BuzzBallz*, 2015 WL 3948757, at *5; *Firefly*, 817 F. Supp. at 864.

## 2.  Regus's "HQ" Design Is Weak.

The "strength of the mark" factor considers (a) the conceptual strength of the mark and (b) the commercial strength of the mark.  *Sun Banks*, 651 F.2d at 315; *Brennan's*, 512 F. Supp. 2d at 563.  With respect to the former, courts consider the "[t]ype" of term at issue, with "fictitious, arbitrary or fanciful" terms being strong, whereas "descriptive" terms are weak, and "generic" terms are not protected at all.  *Sun Banks*, 651 F.2d at 315.  Regus omits all discussion of the conceptual strength of "HQ," which is unsurprising given Regus's generic use of "HQ" and the 55 dictionaries and thesauruses confirming that "HQ" means "headquarters."  (App. at 79-80, 82-83, 124-209.)  Thus, "HQ" is conceptually weak.  *Oreck*, 803 F.2d at 170-71 ("XL" meant "extended life"); *Sec. Ctr.*, 750 F.2d at 1302); *Am. Heritage*, 494 F.2d at 11-13 (mark weak based on dictionary definitions and industry usage).

With respect to commercial strength, third party uses strongly suggest the weakness of a mark, as it shows that the term is not uniquely associated with plaintiff.  *Oreck*, 803 F.2d at 170; *Action Ink v. Anheuser-Busch*, 959 F. Supp. 2d 934, 944 (E.D. La. 2013).  There have been at least 46 third party names and products, 81 book titles, and over 21,000 articles that use "HQ" for headquarters or office space.  (App. at 83-86, 210-264.)  Courts have found marks weak based on similar, or less, evidence.  *Oreck*, 803 F.2d at 170; *Holiday Inns, Inc. v. Holiday Out In*

---

[4] Contrary to Regus's vague assertion that online search results will cause confusion, such search results do not show actual confusion.  *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1151 (9th Cir. 2011); *Sullivan v. CBS Corp.*, 385 F.3d 772, 779 (7th Cir. 2004); *Baker v. DeShong*, 90 F. Supp. 3d 659, 664 (N.D. Tex. 2014); *S. Snow Mfg. Co. v. Sno Wizard Holdings, Inc.*, 829 F. Supp. 2d 431, 436 (E.D. La. 2011).

*Am.*, 481 F.2d 445, 448 (5th Cir. 1973) (many third party uses of "Holiday"); *John Crane*, 861 F. Supp. 2d at 796; *Kensington Partners v. Cordillera Ranch, Ltd.*, No. SA98CA121DWS, 1998 WL 1782540, at *9 (W.D. Tex. June 16, 1998) ("substantial third-party use" shown by 33 uses).

Regus ignores this strong evidence of third party use. Instead, it argues that its incontestable design registration establishes the strength of its mark. This argument is incorrect. Incontestability is not a factor in determining the strength of a mark for purposes of likelihood of confusion. In other words, "[i]ncontestable status does not make a weak mark strong." *Oreck*, 803 F.3d at 171; *see Action Ink*, 959 F. Supp. 2d at 946; 6 McCarthy § 32:155. Thus, even where a registration is incontestable, courts find marks weak. *Oreck*, 803 F.3d at 171; *Brennan's*, 512 F. Supp. 2d at 562-63; *Action Ink*, 959 F. Supp. 2d at 946.[5]

Nor do Regus's revenues establish the strength of its "HQ" design, given the generic nature of "HQ," the numerous third party uses, and its failure to use the registered design for over 18 years. *Brennan's*, 512 F. Supp. 2d at 565 (no likelihood of confusion where, despite long use and high renown, mark was weak given third-party use); *Oreck*, 803 F.2d at 171 (no likelihood of confusion despite extensive advertising).[6] This is consistent with the results of Dr. Simonson's survey showing that "HQ" is not viewed as a mark (App. at 433-434, 452-454), as well as the survey by expert Hal Poret (discussed further below), which showed that Regus's "HQ" designs are not well-known in Texas (*id.* at 545, 562-563, 580). Such evidence is significant, as courts place "considerable weight" on surveys. *Half Price Books, Records, Magazines, Inc. v. Barnesandnoble.com, LLC*, No. Civ.A. 302CV2518-G, 2003 WL 23175436,

---

[5] *Alliance for Good Gov't v. Coalition for Better Gov't* did not rely merely on the registration, but rather analyzed the strength of the logo. 901 F.3d 498, 509 (5th Cir. 2018). Nor did that case overturn *Oreck*.
[6] Regus's reliance on *VPI Holding* is misplaced, as the marks there "do not refer to a general category or provide a description of [plaintiff's] goods," unlike the generic nature of "HQ" for office space. 2014 WL 12584331, at *4.

at *5 (N.D. Tex. Aug. 15, 2003); *see Sno-Wizard Mfg., Inc. v. Eisemann Prods. Co.*, 791 F.2d 423, 427 (5th Cir. 1986) (survey supported non-distinctiveness).[7]

### 3.    WeWork's Use Of "HQ By WeWork" Is Distinct.

Potential similarities between the parties' uses "must not be viewed in isolation.  Rather, [courts] must 'look at the competing marks in their entirety and not merely at individual similar features.'"  *Oreck*, 803 F.2d at 171 (citation omitted).  In the context of weak marks, "minor additions may effectively negate" similarities.  *Sun Banks*, 651 F.2d at 318.

Here, when viewed in real life, the "HQ by WeWork" phrase is dissimilar to Regus's "HQ" design.  The relevant comparison is the design Regus used when WeWork started using "HQ by WeWork."  *J.T. Colby & Co., Inc. v. Apple Inc.*, No. 11 Civ. 4060(DLC), 2013 WL 1903883, at *17 (S.D.N.Y. May 8, 2013) (considering plaintiff's mark when defendant began use, not plaintiff's new version).  At that time, Regus used the Globe Design, featuring a globe



and "A MEMBER OF THE REGUS GROUP NETWORK":                                          . (App. at 672, 691-693.)  The "HQ by WeWork" phrase is a far cry from that design—it does not use a globe, uses a different font and color scheme, does not reference any affiliation with Regus, and emphasizes the well-known WEWORK mark.  (App. at 5-7, 54-71.)  WeWork's use also is materially different from the abandoned Design Registration and the New Design.  (App. at 75, 672, 691-696.)  The only commonality between the parties' uses is the generic and common term "HQ," which cannot be viewed alone.  *Sun Banks*, 651 F.2d at 318.  Accordingly, confusion is unlikely.  *Pulse EFT Assoc. v. Sears Roebuck & Co.*, 247 F.3d 240, 2001 WL 43454, at *3 (5th

---

[7] Regus's reliance on North American sales is misplaced (Osburne Decl. ¶ 5) as the United States is the only relevant market.  *Art Attacks Ink, LLC v. MGA Entm't, Inc.*, No. 04-cv-1035, 2005 WL 8160189, at *4 (S.D. Cal. Dec. 27, 2005).

Cir. 2001); *Oreck*, 803 F.2d at 171; *Sec. Ctr.*, 750 F.2d at 1302; *Mini Melts, Inc. v. Reckitt Benckiser, Inc.*, No. 4:07-cv-271, 2009 WL 10677599, at *4 (E.D. Tex. Feb. 26, 2009).

Regus's assertion that the use of "by WeWork" increases the likelihood of confusion is misplaced.  In fact, a house mark makes confusion *less* likely.  For instance, in *Citigroup Inc. v. AT&T Servs., Inc.*, the parties used a common word (THANKS or THANK YOU) for their rewards programs, but the court denied the preliminary injunction, noting that AT&T's house mark dispelled confusion.  No. 16-cv-4333 KBF, 2016 WL 4362206, at *9 (S.D.N.Y. Aug. 11, 2016); *see Blue Bell Bio-Medical v. Cin-Bad, Inc.*, 864 F.2d 1253, 1260 (5th Cir. 1989); *Sno-Wizard*, 791 F.2d at 429; *Mini Melts*, 2009 WL 10677599, at *4.  Regus's cases are inapposite, as they do not involve generic terms, and the house mark in *Shell Trademark Mgmt. B.V. v. Warren Unilube, Inc.*, 765 F. Supp. 2d 884, 900 (S.D. Tex. 2011) was not prominent.

### 4.      WeWork's "HQ By WeWork" Services Are Distinct.

"[T]he mere fact that two products or services fall within the same general field . . . does not mean that the products or services are sufficiently similar to create a likelihood of confusion."  *Matrix Motor Co., Inc. v. Toyota Jidosha Kabushiki Kaisha*, 290 F. Supp. 2d 1083, 1092 (C.D. Cal. 2003) (citation omitted); *see Amstar*, 615 F.2d at 261.  Thus, courts distinguish products within the same industry and find confusion unlikely.  *Oreck*, 803 F.2d at 171 (distinguishing floor cleaning products); *Firefly*, 817 F. Supp. 2d at 864 (content management applications); *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 498 F. Supp. 805, 811 (D. Mass. 1980) (cameras).  For instance, courts have found products non-competitive, and confusion unlikely, where only one party's products were customized.  *Hypnotic Hats, Ltd. v. Wintermantel Enters., LLC*, No. 1:15-CV-06478 (ALC), 2018 WL 4681609, at *8 (S.D.N.Y. Sept. 28, 2018); *Matrix Motor*, 290 F. Supp. 2d at 1092; *S Indus., Inc. v. JL Audio, Inc.*, 29 F.

Supp. 2d 878, 891 (N.D. Ill. 1998).  Further, confusion may be unlikely even between "virtually identical" services particularly where a mark is weak.  *Sec. Ctr.*, 750 F.2d at 1302.

Here, "HQ by WeWork" is distinct from Regus's services.  Regus provides preexisting, shared offices that are staffed by Regus, on a short-term basis, whereas WeWork's service provides customized, private HQs that are primarily staffed by the customer (not WeWork), for at least two years.  (App. at 7-8, 76-77, 93, 422-425.)  Thus, the parties' services are distinct, and Regus's reliance on *Exxon Corp. v. Texas Motor Exchange of Houston, Inc.*, which involved identical products, is misplaced.  628 F.2d 500, 507 (5th Cir. 1980).

### 5.      WeWork's Purchasers Are Distinct.

Confusion also is unlikely because the parties target different consumers and provide their services in different locations.  *Soc'y of Fin. Exam'rs*, 41 F.3d at 228-29 (court erred in finding purchasers the same where plaintiff targeted specific class of regulatory officials); *Amstar*, 615 F.2d at 262.  Whereas the "HQ by WeWork" service is specifically for mid-sized companies, Regus's services are more broadly marketed to individuals and businesses of all sizes.  (App. at 4, 47-53, 94.)  WeWork's service is also only available at limited locations (*id.* at 7), and the mere fact that both parties provide space in "buildings" does not make confusion likely.  *Kensington*, 1998 WL 1782540, at *7 (parties both offered home developments).

### 6.      WeWork Uses Distinct Advertising Media.

Regus argues that confusion is likely because the parties advertise online and attend conferences.  But merely advertising "online" does not make confusion likely.[8]  *King Ranch*, 2012 WL 1788178, at *9.  Nor does attendance at a general industry conference make confusion likely.  (App. at 80.)  *Oreck*, 803 F.2d at 172-73.  As those are Regus's only arguments, and

---

[8] Regus claims that WeWork has purchased "Regus" as a Google Ads keyword, but that is irrelevant to Regus's "HQ" services and does not make confusion likely.  *J.G. Wentworth, S.S.C. Ltd. P'ship v. Settlement Funding LLC*, No. 06-0597, 2007 WL 30115, at *6 (E.D. Pa. Jan. 4, 2007); 5 McCarthy § 25A:7.

WeWork markets its service through its own branded environments, like its website (App. at 5), this factor shows that confusion is unlikely. *Colby*, 2013 WL 1903883, at *17.

### 7.    WeWork Selected "HQ By WeWork" In Good Faith.

Contrary to Regus's assertion, there is no indication that "HQ by WeWork" was adopted to trade on Regus's reputation.  A plaintiff must provide evidence for this factor to favor it. *Pulse*, 247 F.3d at *4; *Oreck*, 803 F.2d at 173; *BuzzBallz*, 2015 WL 3948757, at *5; *Mini Melts*, 2009 WL 10677599, at *5.  Regus claims that the existence of its registration shows WeWork's bad faith.  But even actual knowledge of a registration—which did not exist here (App. at 4-5)— does not show bad faith, particularly where, as here, the registration was abandoned.  *Amstar*, 615 F.2d at 263; *Water Pik, Inc. v. Med-Sys., Inc.*, 726 F.3d 1136, 1159-60 (10th Cir. 2013); *John Crane*, 861 F. Supp. 2d at 797; *Colby*, 2013 WL 1903883, at *23-*24.[9]  Regardless, WeWork adopted "HQ by WeWork" in good faith, because "HQ" is a generic term for headquarters, consistent with how many others have used "HQ."  (App. at 2, 4-5, 12-40, 75.) *Zatarains*, 698 F.2d at 796 (defendant believed term was generic); *Firefly*, 817 F. Supp. 2d at 865 (no bad faith in using generic term); *Chum Ltd. v. Lisowski*, 198 F. Supp. 2d 530, 540 (S.D.N.Y. 2002) (generic term used in good faith).

### 8.    The Potential Purchasers Are Highly Sophisticated.

It is well-established that confusion is unlikely where the product is a "big ticket" item, particularly when purchased for a business, because buyers are more likely to be discerning. *Armstrong Cork*, 597 F.2d at 504 n.10; *see Blue Bell*, 864 F.2d at 1260; *Oreck*, 803 F.2d at 173-74; *Sno-Wizard Mfg.*, 791 F.2d at 429 (confusion unlikely for "relatively high-priced single

---

[9] Regus's remaining arguments similarly fail.  *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 486 (5th Cir. 2004) ("intent to compete . . . is not tantamount to intent to confuse").

purchase article"); *Pignons*, 498 F. Supp. at 813.  Even where many factors favor plaintiff, this factor can be sufficient to defeat a preliminary injunction.  *John Crane*, 861 F. Supp. 2d at 801.

Here, because WeWork's prospective customers "are buying for professional . . . purposes at a cost in the thousands of dollars, they are virtually certain to be informed, deliberate buyers."  *Oreck*, 803 F.2d at 173.  Businesses are extremely careful in selecting HQs, and WeWork's service is expensive and requires a long-term commitment.  (App. at 7-8, 77-78.) Confusion is also unlikely because the HQs are customized.  (*Id.* at 7, 92-94, 422-425.)  *John Crane*, 861 F. Supp. 2d at 798 (product was "tailored" for "highly sophisticated" customers); *Firefly*, 817 F. Supp. at 864-65; *S Indus.*, 29 F. Supp. 2d at 892 ("custom made" products bought with care).  Regus strains to argue that a product's price is not dispositive.  But Regus's cases, unlike here, dealt with a confused, "untrained buyer," *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 231 (5th Cir. 2009), and a product "of negligible cost and complexity," *Fuji Photo Film Co. v. Shinohara Shoji Kabushiki Kaisha*, 754 F.2d 591, 595-96 (5th Cir. 1985).

### D.    Regus's Texas Dilution Claim Is Unlikely To Succeed.

Regus cannot show that (1) its design is "famous and distinctive," and (2) WeWork's use is likely to dilute that design.  Tex. Bus. & Com. § 16.103(a); *Michael Kors, L.L.C. v. Hernandez Int'l Inc.*, No. 4:15-CV-0844, 2016 WL 6306129, at *18 n.108 (S.D. Tex. Oct. 27, 2016).

### 1.    Regus's "HQ" Is Not A Famous Mark.

A mark is considered famous if it is "widely recognized throughout [Texas] . . . as a designation of source of the goods or services of the mark's owner."  Tex. Bus. & Com. § 16.103(b).  An association with "particular goods or services" is not sufficient.  *Pulse*, 247 F.3d at *5.  Rather, a famous mark must generally be recognized among Texas consumers.  *Spirit Monkey, LLC. v. Imagestuff.com, Inc.*, No. SA-17-CA-48-OLG, 2017 WL 8182724, at *4 (W.D. Tex. July 24, 2017); *Hillstone Rest. Grp., Inc. v. Hillstone Mgmt., LLC*, No. 3:16-CV-2624-D,

2017 WL 495869 at *3 (N.D. Tex. Feb. 7, 2017).  To assess fame, courts consider multiple factors, including advertisements and publicity, sales, the extent of actual recognition, and whether the mark is registered.  Tex. Bus. & Com. § 16.103(b).

Here, Regus cannot come close to establishing that "HQ" is famous.[10]  As discussed in Section IV.A, the dictionary and thesaurus definitions of "HQ" and extensive third party uses indicate that "HQ" is not exclusively associated with Regus.  *Pulse*, 247 F.3d at *5 (common term not famous based on third party use); *Apple, Inc. v. Amazon.com, Inc.*, No. C-11-1327-PJH, 2011 WL 2638191, at *11 (C.D. Cal. July 6, 2011) (same).  Tellingly, Regus offers no survey showing recognition among Texas consumers, which "weighs heavily" against fame.  *See Idaho Golf Partners, Inc. v. TimerStone Mgmt, LLC*, No. 1:14-cv-00233-BLW, 2017 WL 3531481, at *6 (D. Idaho Aug. 17, 2017); *IVFMD*, 2014 WL 11515574, at *3-*4.

That is unsurprising, considering that Mr. Poret's survey confirmed that only 12.6% of Texas consumers have ever seen or heard of "HQ" used by *any* company, and only one respondent out of 800 (0.1%) identified Regus's affiliate when shown the Globe Design.  (App. at 544, 562, 573.)  Such survey results do not come close to the 75% "minimum threshold" required for fame.  McCarthy § 24:106; *see Am. Mensa, Ltd. v. Inpharmatica, Ltd.*, No. WDQ-07-3283, 2008 WL 11363280, at *12-*13 (D. Md. Nov. 6, 2008) (59% recognition insufficient).  The surveys of both Mr. Poret and Dr. Simonson confirm that "HQ" should not be broadly protected under dilution law.  (App. at 434, 545); 4 McCarthy § 24:67.

The only evidence that Regus provides relates to its general use of "HQ," and its revenues.  Courts have found fame not established based on similar facts.  *Advantage Rent-a-Car, Inc. v. Enter. Rent-a-Car, Co.*, 238 F.3d 378, 379 (5th Cir. 2001) ($130 million in

---

[10]  Nor can Regus establish that "HQ" is distinctive, as discussed above in Section IV.C.2.

advertising did not show fame);[11] *Springboards to Educ., Inc. v. Scholastic Book Fairs, Inc.*, No. 3:17-CV-0054-B, 2018 WL 1806500, at *6 (N.D. Tex. Apr. 17, 2018) (marketing and sales were insufficient); *see also Hillstone Rest. Grp.*, 2017 WL 495869 at *3.  Regus's cases do not lead to a different conclusion because each found fame based on more evidence than here.  *Buc-ee's, Ltd. v. Panjwani*, No. 4:15-CV-03704, 2017 WL 4221461 (S.D. Tex. Sept. 21, 2017) (media coverage, hundreds of billboards and survey); *Emerald City Mgmt., LLC v. Kahn*, No. 4:14-CV-358, 2016 WL 98751 (E.D. Tex. Jan. 8, 2016) (database of 8,000 potential customers and over 600 recent performances in Dallas/Fort Worth).  *VPI Holdings* does not even address fame.

## 2.     "HQ By WeWork" Is Unlikely To Dilute Regus's "HQ."

Regus also must show that WeWork's use of "HQ by WeWork" is likely to be associated with Regus's use of "HQ," ultimately impairing the distinctiveness of "HQ" and causing harm. *Fantastic Sams Franchise Corp. v. Mosley*, No. H-16-2318, 2016 WL 7426403 at *6 (S.D. Tex. Dec. 23, 2016).  Regus cannot make this showing.  Tellingly, there is no evidence of an association between Regus's "HQ" and "HQ by WeWork," nor that such an association would impair the distinctiveness of Regus's "HQ."  *Fantastic Sam*, 2016 WL 7426403 at *8.  Dilution is also highly unlikely, given the extensive third party use that already exists, indicating that Regus's "HQ" is "already 'diluted' in fact."  McCarthy § 24:119; *see Va. Polytechnic Inst. & State Univ. v. Hokie Real Estate, Inc.*, 100 U.S.P.Q.2d 1199, 2011 WL 926862, at *15 (W.D. Va. Mar. 15, 2011).  The only case Regus cites is inapplicable, as it was decided before the Texas statute required fame, and defendant did not contest the mark's validity.  *Cottonwood Fin. Ltd. v. Cash Store Fin. Servs., Inc.*, 778 F. Supp. 2d 726, 759 (N.D. Tex. 2011).

---

[11] *Advantage Rent-a-Car* remanded on whether the mark was "distinctive," but the Texas statute was amended in 2012 to also require fame.  *See Bulbs 4 East Side, Inc. v. Ricks*, 199 F. Supp. 3d 1151, 1172 (S.D. Tex. 2016).

E.      **Regus's Additional Texas State Law Claims Are Unlikely To Succeed.**

As Regus concedes, its other claims are premised entirely on WeWork's use of "HQ by WeWork" and governed by the same law.  Thus, for the reasons discussed above, Regus cannot succeed.  *Scott Fetzer*, 381 F.3d at 484; *IVFMD*, 2014 WL 11515574, at *2; *Decorative Ctr. of Houston, L.P. v. Direct Response Pubs., Inc.*, 264 F. Supp. 2d 535, 556 (S.D. Tex. 2003).  Regus cannot succeed on its tortious interference claim for the added reason that it has not "identif[ied] clients with which [it] would have done business but for [WeWork's] conduct,"[12] *Zhejiang Med. Co., Ltd. v. Kaneka Corp.*, No. H-11-1052, 2012 WL 12893418, at *4 (S.D. Tex. Aug. 13, 2012), nor any actual damages, *BCOWW Holdings,* 2017 WL 3868184, at *12.  Regus also cannot show that it would have obtained new clients but for WeWork's use.  (App. at 9); *GE Betz Inc. v. Moffitt-Johnson*, 301 F. Supp. 3d 696, 697 (S.D. Tex. 2014).[13]

V.      **THE BALANCE OF HARDSHIPS FAVORS WEWORK**

The balance of hardships also favors WeWork.  *First*, since the August launch, WeWork has extensively promoted and invested in marketing materials, which would need to be changed if an injunction issues.  (App. at 9-10.)  *Playmakers LLC v. ESPN, Inc.*, 376 F.3d 894, 989 (9th Cir. 2004); *Instant Media, Inc. v. Microsoft Corp.*, No. 07-cv-2639, 2007 WL 2318948, at *17 (N.D. Cal. Aug. 13, 2007); *First Franklin Fin. Corp. v. Franklin First Fin., Ltd.*, 356 F. Supp. 2d 1048, 1055 (N.D. Cal. 2005).  WeWork also would be forced to modify agreements and rename corporate entities related to its service, and would be deprived of using the generic term "HQ."  (App. at 10.)  *Hershey Creamery Co. v. Hershey Chocolate Corp.*, 269 F. Supp. 45, 55 (S.D.N.Y. 1967).  Given the difficulty of making these changes, a "preliminary" injunction would, as a

---

[12] This is unsurprising, given that the "HQ by WeWork" service is not even available in Texas.  (App. at 7.)

[13] Regus's cited case *refused* to enter a preliminary injunction related to an employee poaching customers.  *Wellpath Sol., Inc. v. Wellpath Energy Servs., LLC*, No. 6:12cv286, 2013 WL 12123326, at *1 (E.D. Tex. Jan. 20, 2013).  In any event, offering incentives is commonplace in the commercial real estate industry.  (App. at 9, 98, 428-429.)

practical matter, be permanent, as it would be impractical for WeWork to switch back to "HQ by WeWork" if vindicated.   (App. at 10.)   *Long Island-Airports Limousine Serv. Corp. v. N.Y. Airport Servs. Corp.*, 641 F. Supp. 1005, 1012 (E.D.N.Y. 1986).   *Second*, an injunction and the resulting disruption of WeWork's service is likely to convince at least some potential buyers that WeWork did something wrong, though it acted in good faith.   (App. at 10.)   Even if WeWork ultimately prevails, its reputation would be irreparably harmed.   *Downloadcard, Inc. v. Universal Music Grp., Inc.*, No. 02-cv-7710, 2002 WL 31662924, at *5 (S.D.N.Y. Nov. 26, 2002).

Regus's argument on this element is misguidedly premised on the assumption that "HQ by WeWork" is infringing.   Because WeWork's use is fair and confusion unlikely, Regus's cases are inapposite.   *VPI Holding*, 2014 WL 12584331, at *7; *TGI Friday's Inc. v. Great Nw. Rests., Inc.*, 652 F. Supp. 2d 763, 767 (N.D. Tex. 2009); *Equibrand*, 2007 WL 1461393, at *15. Moreover, where a party believes in good faith that its conduct is not infringing, its continued use will not tip the balance against it.   *Alto Velo Racing Club v. Rouleur Sports Grp., LLC*, No. 15-cv-02144, 2015 WL 5462055, at *7 (N.D. Cal. Sept. 17, 2015); *Sutter Home Winery, Inc. v. Madrona Vineyards LP*, No. 05-cv-0587, 2005 WL 701599, at *14 (N.D. Cal. Mar. 23, 2005).

## VI.   THE PUBLIC INTEREST IS SERVED BY DENYING THE INJUNCTION

The public interest weighs against Regus because it has not shown that the public is likely to be confused, and the public interest is served by not allowing one entity to monopolize a generic term that all should be free to use.   *Brennan's*, 289 Fed. Appx. at 708; *Real-Time Reporters, P.C. v. Sonntag Reporting Servs., Ltd.*, No. 13-C-5348, 2013 WL 5818460, at *3 (N.D. Ill. Oct. 29, 2013).   Tellingly, Regus does not cite a single trademark case on this element, but rather, only cites a copyright infringement case and case considering a 12(b)(6) motion.

## VII.   CONCLUSION

Accordingly, the Court should deny Regus's motion for preliminary injunction.

Dated:  December 3, 2018

/s/ Dale M. Cendali
_____

Dale M. Cendali (admitted *pro hac vice*)
Shanti Sadtler Conway (admitted *pro hac vice*)
Hunter Vanaria (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
dale.cendali@kirkland.com
shanti.conway@kirkland.com

Richard B. Roper (SB No. 17233700)
Dina W. McKenney (SB No. 24092809)
THOMSON & KNIGHT LLP
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Telephone: (214) 969-120
Facsimile: (214) 880-3357
richard.roper@tklaw.com
dina.mckenney@tklaw.com

*Attorneys for Defendant and Counterclaim-*
*Plaintiff WeWork Companies Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 3, 2018, a true and accurate copy of the foregoing was electronically filed with the Clerk of the Court for the Northern District of Texas, using the CM/ECF system, which will send notification of such filing to the following:

> Yvette Ostolaza
> yvette.ostolaza@sidley.com
> Paige Holden Montgomery
> pmontgomery@sidley.com
> Mitchell Brant Feinberg
> mitchell.feinberg@sidley.com
> SIDLEY AUSTIN LLP
> 2021 McKinney Ave, Suite 2000
> Dallas, Texas 75201
> (214) 981-3300 (Telephone)
> (214) 981-3400 (Facsimile

*/s/ Dale M. Cendali*

Dale M. Cendali (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
dale.cendali@kirkland.com

*Attorneys for WeWork Companies Inc.*